**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRANZACT TECHNOLOGIES, INC.,<br>doing business as FREEDOM LOGISTICS,<br>an Illinois corporation, | )<br>)<br>) | |
| | ) | |
| Plaintiff, | )<br>) | |
| | ) | Case No.: |
| v. | )<br>) | |
| FREEDOM LOGISTICS, LLC,<br>a Tennessee limited liability company, | )<br>)<br>) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF MICHAEL A. REGAN**

I, MICHAEL A. REGAN, pursuant to 28 USC § 1746, do hereby declare under penalty of perjury that the following statement is true and correct and if called upon to testify, my testimony would be as follows:

1.      I am of legal age and under no legal disability to testify in the above-captioned proceeding, and the following declarations are made upon my own personal knowledge.

2.      I am the CEO of Tranzact Technologies, Inc. d/b/a "Freedom Logistics®" ("Freedom") and, in that capacity, I am authorized to submit this Declaration on behalf of Freedom.

3.      I have been involved in the transportation industry since 1976 in a number of different capacities. I also have qualified myself as a CPA.

4.      On December 18, 1983, Don Kehoe and I incorporated TranzAct Systems, Inc., n/k/a Tranzact Technologies, Inc. and we started doing business with our national headquarters in Elmhurst, Illinois, in December 1985, as a Logistics Services provider adopting the simple

1

express aim of helping our customers reduce their freight costs through aggressive rate negotiations with motor carriers and the adoption of new technology as it became available.

5.    On April 10, 1996, Tranzact Systems, Ltd. first began using the service mark "Freedom Logistics®" in commerce in connection with its business that included providing service as a transportation broker pursuant to brokerage authority granted by the predecessor to the Federal Motor Carrier Safety Administration under MC # 303717B.

6. Tranzact Systems, Ltd. used "Freedom Logistics®" to operate the "Freedom Logistics® Network" as a third party logistics provider as well as realizing upon specialized technology focused on transportation developed over many years, such as rate data bases. The "Freedom Logistics® Network" has operated in interstate commerce throughout the United States, including the State of Tennessee, simultaneously since April 10, 1996.

7.    Besides the "Freedom Logistics® Network", Tranzact Technologies, Inc. also provides the brokering of truckload shipments as "Freedom Logistics®".

8.    Since April 10, 1996, Freedom has used the service mark "Freedom Logistics®" throughout the United States, including in Tennessee, in connection with the provision of at least services that fall into five general categories which include (a) payment and auditing of freight bills, (b) providing customized transportation reports at customer requests, (c) providing a transportation marketplace for motor carrier and shipper customers based upon proprietary technology and a proprietary rating system, (d) providing a less than truckload rating data base for shipper customers and carrier customers to establish distinct lane priorities and usages, and, (e) providing generic truckload freight brokerage of motor carriage.

9.    The general services described as (a), (b), (c) and (d) in paragraph 8 are bundled into the unique offering offered by Freedom previously described as the "Freedom Logistics®

2

Network." While the Freedom technology allows for all four specialized services to be offered as an integrated service by Freedom for less than truckload carriers, the "Freedom Logistics Network" can also be unbundled by our shipper customers. For example, our shipper customers can select motor carriers in a specific traffic lane by using our "Star Rate" system, a specialized rating system developed at great cost to my company. That is, our shipper customers can call up computerized rates of carriers by traffic lane and by the rate level charged by each carrier.

10.     In the freight brokerage of motor carriage industry, in most instances involving generic truckload freight brokerage of motor carriage, the typical transaction begins and ends with the shipper customer telephoning or contacting the broker electronically to obtain a rate for the transportation of the shipper customer's freight and the broker arranging with a carrier to transport the freight. There is no involved selection process for truck brokers and that is a principal reason we have marketed our services using Freedom Logistics®" to distinguish the service and technology we offer.

11.     Freedom    also    maintains    a    website    with    the    domain    name www.freedomlogistics.com which serves as a gateway for services provided by Freedom to its contracted shipper customers and motor carrier customers utilizing the "Freedom Logistics® Network" transportation marketplace as well as for its customers of general freight brokerage of motor carrier services. I have attached a true and correct copy of a printout from Freedom's website as Exhibit A.

12.     On December 9, 1997, Tranzact Systems, Ltd. n/k/a Tranzact Technologies, Inc. registered its "Freedom Logistics®" service mark with the United States Patent and Trademark Office.

3

13.    Attached hereto as Exhibit B is a true and correct copy of Freedom's registered service mark as it appears on the principal register at the United States Patent and Trademark Office and found at www.uspto.gov.

14.    On September 12, 2003, Tranzact Systems, Ltd. assigned its service mark to Tranzact Technologies, Inc.  A copy of the document memorializing said assignment is attached hereto as Exhibit C.

15.    From 1996 to the present day, I have made sure Freedom has consistently and without interruption used and depended upon the service mark "Freedom Logistics®" in connection with the services described above to describe the unique business model we have developed and followed.

16.    On October 10, 2007, I discovered for the first time that Defendant was using the "Freedom Logistics®" service mark in connection with many of the same activities described on Freedom's service mark registration.

17.    On or about October 10, 2007, I reviewed a page from the Secretary of State for the State of Tennessee which revealed that Defendant is a Tennessee limited liability company formed in October 2003.  A copy of the public record that I reviewed from the Secretary of State's website is attached hereto as Exh. D.

18.    Upon discovering the use of the "Freedom Logistics" service mark by Defendant, I also reviewed the public records maintained by the Federal Motor Carrier Safety Administration ("FMCSA") at the website www.safersys.org. Attached hereto as Exh. E is a public record I reviewed maintained by the FMCSA showing that Defendant obtained freight broker authority under MC # 475694 in February 13, 2004.

19.     After discovering the use of the "Freedom Logistics®" service mark by Defendant, I conducted a web-based search using google.com for the term "Freedom Logistics®". As part of that search, I discovered that Defendant advertises itself at allpages.com, a nationwide yellow pages website, under the name "Freedom Logistics". A true and correct copy of a printout from the allpages.com website I reviewed is attached hereto as Exhibit F.

20.     I also reviewed a profile of Defendant advertising itself as "Freedom Logistics" at the website city-data.com, wherein the Defendant advertises itself as a transportation broker, among other things, that can move its customers' "truckload freight anywhere in the United States." A true and correct copy of a printout from the city-data.com website I reviewed is attached hereto as Exhibit G.

21.     I also reviewed what appeared to me to be an advertisement for Defendant on the loadmax.com website which is known to me as a website which allows truckers nationwide to search for available loads for transport. A true and correct copy of a printout from the loadmax.com website I reviewed is attached hereto as Exhibit H.

22.     On or about October 10, 2007, I reviewed the website www.nainashville.com, which advertises itself as providing nationwide real estate services. In reviewing the website, I discovered that Defendant had entered into a major lease transaction in Wilson County, Tennessee for a 64,880 sq. ft. facility under the name "Freedom Logistics". A true and correct copy of the NAI Nashville Industrial Report, Second Quarter 2007, that I reviewed, as printed out from the www.nainashville.com website on or about October 10, 2007 is attached hereto as Exhibit I.

23.     I also reviewed a profile of Defendant advertising itself as "Freedom Logistics" at the website www.lebanonwilsontnchamber.org/members/index, wherein it is represented that on

June 2007 Defendant joined the Lebanon, Tennessee chamber of commerce under the service mark "Freedom Logistics®". A true and correct copy of a printout from the www.lebanonwilsontnchamber.org/members/index website I reviewed is attached hereto as Exhibit J.

24.     I also reviewed a news report concerning the Defendant at the website NashvillePost.com, wherein it was reported in a "Real Estate Notes" article dated September 27, 2006, that Defendant had leased warehouse space in Gordonsville, Tennessee. The article, however, referred to Defendant as "Freedom Logistics® Network…a service of Elmhurst, Ill.-based Tranzact Technologies, Inc." thus clearly confusing Defendant with my company and my company's use of its service mark "Freedom Logistics®". A true and correct copy of a printout from the NashvillePost.com website I reviewed is attached hereto as Exhibit K. I am especially concerned with this report as it shows my company leasing the facility. This confusion is especially troubling to me as it could affect our customers' perception of our business. Freedom has never leased a warehouse within the Gordonsville, Tennessee area.

25.     On October 11, 2007, I directed Freedom's attorneys, Sullivan Hincks & Conway, to send a letter to Defendant in Gordonsville, Tennessee and Lebanon, Tennessee demanding that Defendant cease and desist from using the "Freedom Logistics®" service mark in any way. I specifically approved the demand related based upon my own knowledge and because of the damage that is being visited upon my company. Attached hereto as Exhibit L is a copy of the letter I directed Freedom's attorneys to send on Freedom's behalf.

26.     Since sending the letter on October 11, 2007, Freedom has received no response from Defendant.

27. Since we first registered the service mark "Freedom Logistics®" on the principal register of the USPTO in 1997, Freedom has aggressively defended its service mark against transportation companies attempting to trade on our name.

28. In November 2001, on behalf of my company, I directed a contact and demand that a company in Ohio using the name "Freedom Logistics®" in connection with the provision of transportation service cease its use of Freedom's service mark. Attached hereto as Exhibit M is a true and correct copy of the Agreement we executed on or about November 30, 2001 with the Ohio company in which the Ohio company agrees to cease using the "Freedom Logistics®" service mark.

29. In or about July 1998, on behalf of my company, I directed a contact and demand that a Delaware corporation doing business in Pennsylvania cease using the name "Freedom Logistics®" in connection with the provision of transportation service. Attached hereto as Exhibit N is a true and correct copy of the Letter we received on or about July 7, 1998, from an attorney representing the Delaware corporation in which it agrees to agrees to cease operating under the "Freedom Logistics®" service mark in connection with its business.

30. In or about July 2001, I directed a contact and demand that a company in South Carolina using the name "Freedom Logistics®" in connection with the provision of transportation service cease its use of Freedom's service mark. After we made contact, the South Carolina company agreed not to use the Freedom Logistics® service mark in connection with the provision of transportation services and instead use the assumed name "Truckers Express."

31. Since at least 1997, Freedom, using the service mark "Freedom Logistics®", has actively and aggressively advertised and publicized the freight brokerage of motor carriage services we provide as a generic freight brokerage service, as well as the sophisticated

7

transportation marketplace we created, known as the "Freedom Logistics® Network", and we consistently maintain and use the service mark "Freedom Logistics®" through trade publications throughout the United States.

32.    I attach two representative brochures we have maintained and utilized to establish "Freedom Logistics®" as our brand nationwide as Exhibits O and P. We have used these materials numerous times. For example, we maintain a booth at the annual meeting of the National Industrial Transportation League, the principal association for shippers in the United States.

33.    Operating under the name "Freedom Logistics®", Freedom has executed written contracts with over 1000 motor carriers to enable Freedom to provide general truckload freight brokerage of motor carrier service under the Freedom Logistics® brokerage authority issued by the FMCSA on November 27, 1996 in Docket No. MC# 303717B.

34.    Freedom's proprietary marketplace, operating under the "Freedom Logistics®" service mark as the "Freedom Logistics® Network", consists of approximately 40 motor carrier-customers and 106 member shipper-customers located across the United States, including the State of Tennessee, who use Freedom's proprietary transportation marketplace and other Logistics Services.

35.    Among Freedom's motor carrier-customers that participate in our proprietary transportation marketplace are large, easily-recognized national motor carriers such as Central Transport, FedEx Freight, Roadway, UPS Freight, USF Holland, and Yellow Transportation.

36.    Attached hereto as Exhibit Q is a statement of revenues directly attributable to services provided by Freedom under the "Freedom Logistics" service mark containing information derived from the books and records of Freedom as they are kept in the ordinary

course of business and those revenues substantially depend upon the goodwill of the "Freedom Logistics" service mark that we have spent over $1 million to develop, make known and used to identify our business nationwide.

37.    On November 10, 2007, Freedom was contacted by Terri Ferraro, a representative of a regular customer of Freedom inquiring whether Freedom knew Defendant after she received an e-mail from Defendant holding itself out as "Freedom Logistics". Attached hereto as Exhibit R is a true and correct copy of a printout from two e-mails sent to me by Ms. Ferraro on November 7, 2007, and November 8, 2007, respectively. I am very concerned about this e-mail as it shows that one of our customers is confused about who the Defendant really is and I do not want Defendant trading on our goodwill that we have built over decades.

38.    Starting in 2005, Freedom received inquiries from several trucking companies an Compunet n/k/a First Advantage concerning the late payment of freight bills which had been billed to "Freedom Logistics®" on shipments for which Freedom had no involvement. This confusion is materially adverse to Freedom as a motor carrier broker's credit is essential to being able to conduct business. I have made sure that our bills are paid timely to protect our credit.

39.    On or about November 20, 2007, I reviewed a page from the Secretary of State for the State of Tennessee which revealed that K & K Trucking, Inc., a company identified by Defendant as the parent company of Defendant on the www.city-data.com, website, is a Tennessee corporation formed 1980. A copy of the public record that I reviewed from the Secretary of State's website is attached hereto as Exhibit R.

40.    I have reviewed the books and records of Freedom and determined that beginning on May 11, 2004, and continuing through October 15, 2007, Freedom paid K & K Trucking, Inc. approximately $500,000.00 in freight bills on behalf of one of Freedom's customers, thus

showing that the principal of Defendant knew or should have known that Freedom was using the "Freedom Logistics©" name in interstate commerce, including in Tennessee, as early as 2004. Attached hereto as Exhibit S is a true and correct copy of a printout of all payments made to K & K Trucking, Inc. by Freedom as they are kept in the books and records of Freedom.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 10, 2007:

_____
Michael Regan